Good morning. May it please the court, Jonathan Libby, appearing on behalf of Appellant Pio Quinzon. Now, Jean-Claude Andre is the defense attorney. He was my law clerk. His wife was my law clerk. His brother was my law clerk, because he's a hell of a salesman, you know. And he's appeared before the Supreme Court one, two out of three. And I want to see what he's learned since he left me. So exercise your motion to recuse. Your Honors, the government concedes that this Court's precedents clearly hold that notice is required before conditions of supervised release not recommended in the guidelines may be imposed. It argues, however, that notice requirements do not survive the Supreme Court's decision in Irizarry. The government is wrong. The fact is, when it comes to conditions of supervised release, nothing has changed post-Booker. And there's nothing in the Irizarry decision that has anything to do with supervised release conditions. Special conditions have always been discretionary. They were discretionary before the Booker decision. And the fact is, notice ---- Why wasn't there adequate notice here? There was not adequate notice here because the Court simply did not inform the defendant what conditions it was contemplating imposing. But the plea agreement sort of did. And the sentencing guidelines list others of the conditions. And the district court raised several of the conditions, especially the one that you're complaining about, right? Well, there are certainly some conditions that there was notice of. I don't dispute that. If they were in the guidelines, then certainly we received notice of that. I don't believe that we had adequate notice because some conditions were listed in the appeal waiver provision of the plea agreements. Those were just a list of possibilities that the defense and the government came up with as, you know, if these happen to be imposed, and we have no idea if they're going to be imposed, but if they happen to be imposed, then the defendant gives up the right to appeal those conditions. But the only one that you're substantively challenging you had notice of. Well, correct. Well, we're not substantively challenging many of the conditions we didn't receive notice of, and there was an aspect certainly of the condition we are challenging that we did not receive notice of, and that is that in addition to the monitoring condition itself, that Mr. Kinzon would be responsible for paying the costs of that the Court indicated could amount to more than $10,000 over the course of supervision. And Mr. Kinzon is indigent, and we were not aware, certainly, even though the Court perhaps gave notice before it imposed it that it was considering the monitoring condition itself, it didn't include that aspect with respect to the costs. So we didn't have notice of that, and since we didn't have notice under this Court's precedence, we should be entitled to a remand to allow us to make the arguments in the district court in the first instance for why those conditions are not appropriate. But you could have argued. I mean, don't you think there's a problem with making a notice argument about conditions that you're not complaining about here? You could have complained about them here on plain error, and you're not doing it. Well, with respect, Your Honor, there's an issue would then arise perhaps since there was an objection raised after the conditions were imposed. You're right, but how can we tell whether it was harmless or not harmless? We don't even know specifically what you're complaining about. Well, because that's the whole system. That's the whole reason why notice is required, and this Court's precedence has said if notice. But now you know what the conditions are, and now you know which ones you would want to complain about, but you're not telling us. But after we knew about them after the fact and did not have an opportunity to litigate them in the district court, make a record as to why some of those conditions might not be appropriate. But, for example, there are a number of these conditions which have already been approved pretty much across the board. And if those are the ones you're complaining about and you told us that, we'd say, oh, well, it's all harmless, it wouldn't have mattered if you had objected anyway. But we don't know what you're complaining about. You haven't told us. Well, again, Your Honor, part of this Court's precedence with respect to notice has said if notice isn't given, you ought to send it back. You don't look as to whether there was plain error or whether there was individual You can go back. Who was the judge there again? Judge Otero. Otero. You can go back before the judge and move for a modification of the condition. Well, we certainly can go back and ask for modification sometime after Mr. Quintana's unsupervised release. Of course, the government can also move for a modification if conditions were not approved. It depends on his conduct in prison and whether he's benefited from therapy there and how his parole officer regards him. Certainly, Your Honor. You know, things change. Sure, but it reverses the burden, Your Honor. At the time of sentencing, the government has the burden of demonstrating why any of these proposed conditions are necessary. On a modification motion, the defendant has the burden of showing why the condition should be modified. So there's a burden shifting if we say, well, you know, you can always come back at a later date and seek a modification. Well, part of probation, conditions of probation are to obey all laws and to follow the rules and regulations of the probation office. It's wide open. It's always been that way. You can't start setting up conditions of specific or take care of some concerns that might arise when a person leaves prison and handle them at the time of sentencing. The system just doesn't work that way. Well, and perhaps there is a problem with the system in that conditions are imposed at the time of sentencing rather than calling the defendant back after he's about to be released and having a hearing then as to what conditions should be imposed. Well, you know, they're not clairvoyant, the judges are. And sure, so judges have to impose the conditions based on the facts available at the time of sentencing. But in order for the defendant to be able to defend against any conditions the court is considering, he has to have noticed that the court is, in fact, considering them. And that's what this Court has said in Wise and Ferris. I'm a little baffled about exactly what you think you're going to accomplish by this, even if we're so. So we'd send it back and then what? Well, we'd have the opportunity to mitigate the conditions, make a record, and perhaps persuade Judge Otero that some of these conditions were not necessary. I mean, that would be the point. But you had a pretty good idea of what the conditions were likely to be, given the fact that they're pretty much always the same. Yes. And you did, in fact, raise some of them, the ones that you were concerned about. And it doesn't seem like a real argument or a real problem, given the fact that these cases have become quite routine. You know what conditions are in play. You know what you care about. You don't care about. You did argue about what you cared about. Well, and, of course, the fact that they perhaps have become routine is a problem in and of itself, since we're supposed to have a minimum of sentencing. Well, that may be. But in terms of whether you had an opportunity to argue, you did and you did argue as to the things that you knew were on the table, because they always are. And once you didn't like it, you complained about it. Well, we know about perhaps we guessed perhaps as to what some were and raised those. Are any of the ones that are in there and that you didn't argue about ones that you weren't absolutely able to predict were going to be in there, honestly speaking? Well, for example, the aspect of the monitoring condition that requires that we take those. Well, that's a different problem, because you did argue about the monitoring. And then the question becomes how specific is the notice that would have to be given? Would he have to give a notice that said not only am I going to require this, but I'm going to require that you pay for it, or else there was no notice? As I understand this Court's precedence with respect to notice, the defendant is entitled to notice of the conditions the court is contemplating imposing. That means the precise language of those proposed conditions. It's not some, you know, broad category of what he's thinking about. It's the precise conditions. And what this Court talked about in Wise is, you know, the defendant and the government can get together and try to negotiate the precise contours of the condition, and they're not able to do that if they don't know what conditions are to be considered. So what's the one that's on the table right now that's the most important? Isn't that the monitoring? It is the monitoring. Okay. So what modification or specificity do you expect with respect to a monitoring regime that's going to not be in effect for, what, nine years? I believe she's scheduled to be released January 1, 2016. 2016. So who knows what kind of monitoring devices are going to be available in 2016? Absolutely, Your Honor. So why isn't there implicit in any monitoring condition the notion that it has to be reasonable or that it has to be in tune with the time? What would you put in? You're not going to say no monitoring, I assume. Well, perhaps no monitoring. I mean, there's already a search and seizure condition, a search condition with respect to his computer. Well, let's assume the judge is going to impose some kind of monitoring. What would you expect the monitoring condition to say? Well, as we suggested, filtering software, which is a less inclusive. Who knows what filtering software is going to be available in 2016? Absolutely. But obviously the court is supposed to. So why would it specify or limit it to filtering software? Because the court is, at the time of sentencing, supposed to impose conditions that are the. . . That predict the future. . . Are narrowly tailored. Sixteen, you know, or five years out, right? Well, which is why you're supposed to give the most narrowly tailored, least restrictive condition at the time, and then further time out. So say filtering and whatever else may be available at the time. Well, and again, as I said, this is perhaps the problem with making the court impose conditions at the time of sentencing rather than waiting until the defendant is released. Obviously technology can change, but because technology can change, we start with the premise that the court imposes the least restrictive condition. We would submit that the filtering software, because it is less restrictive, but meets the same goals as monitoring software, is the least restrictive condition. What is filtering software? Filtering software means that the probation office can put a program onto the computer so it filters out certain websites. It restricts the defendant from being able to access certain websites. It can restrict certain. . . If they see certain language appears in certain e-mails, it can restrict those e-mails being sent. Monitoring software is essentially. . . The court has something before it at the time that suggested, and as I recall, the court said, I don't think that's going to be adequate because there are ways to work around filtering. Well, the government made the position. Yes, they made that position, so the judge bought that argument over your objection. You did offer filtering. We did. Of course, because we didn't have advance notice, there was not extensive argument on this topic.  even though the filtering technology is almost certain to be more sophisticated five years from now. And we should tie up the district court on a hypothetical, on the notion that it has to be based on current technology. But you're tying up the defendant based on current technology. You're not tying him up at all, counsel. All you're saying is, now, there may be language to put in to make it subject to review in the future in light of technology then, but to read it on a technological basis, I have a lot of trouble investing the district court with a burden to resolve technological disputes about something that could be moved six months, not to mention five years from now. What was restricted, that's what the district court did here. It did resolve that dispute, and it resolved the dispute in favor of the more restrictive software that's currently available rather than the less restrictive. So it imposed a greater... Darn right. He probably felt that he wanted to make sure that your guy didn't work his way around computers. Well, perhaps. Or technology. But we don't know that because the court gave no explanation whatsoever. Okay. So we don't know that. And the fact is, the law requires that the court impose the least restrictive condition because the government can always come back when Mr. Kinzon is released from prison, and if it's discovered... The least restrictive consonant with what the court wants to accomplish. At the time of sentencing. Correct. Absolutely. But, again, the government can always come back at the time that Mr. Kinzon is released or after probation, after he's had the less restrictive filtering software on his computer. If probation says, that's not sufficient, the government can come back, probation can come back and say, that's not sufficient. Now we have to impose the greater restriction of monitoring software, which is essentially 24-hour surveillance. We're talking about a surveillance condition when we're talking about monitoring software. Every single keystroke that the defendant types into his computer... Well, you're making assumptions, again, about technology. Well, that's what's currently available. Exactly. So, and that's the condition that Mr. Kinzon is subject to upon his release. What if we just said now that the condition should be revisited at the time of, I mean, directed now, that on motion it should be reconsidered in light of then-existent technology at the time of release? Well, I mean, if the court wanted to vacate the condition with the proviso that, yes, the court should revisit this issue at the time. That's fine. But if we're talking about a sentencing motion, it's my time. This whole argument is almost like Alice in Wonderland, you know. You've got a judge over there in the district court. That's where the system operates day in, day out, 24 hours a day. And you can always go back and ask them to modify it. And your time is up. I appreciate it. And we've been listening to you. Okay. All right. We've been monitoring everything. Yes, I thank you. And we take all this. And we've got cameras, too. Yes, sir. And we've got some nuclear equipment there checking the frame, too, I suppose. There's a lead shield up here, so nobody's checking ours. Okay. So you don't have to start with an apology that you clerked for Judge Fischer. Thank you, Judge Fischer. Good morning. Jean-Claude Andre on behalf of the United States. In an abundance of caution, I'd like to start by just clarifying exactly what the government's position is with respect to the contours of the notice rule that we're advocating. We are not taking the position that a district judge can totally surprise the litigants by just imposing a condition of supervised release for the first time and rejecting a commitment order. Of course, that would offend probably two dozen of this Court's cases regarding the requirement that a district court orally pronounce all aspects of sentence. What we are saying, however, and this is, of course, informed by Ira Zeri and the Eleventh Circuit's decision in Moran, is that so long as the Court pronounces the sentence, pronounces the condition of supervised release in open court, and there is some amount of time where the defendant or defense counsel can pop up and say, Your Honor, we object, this is kind of a surprise, or, Your Honor, this is a surprise, we would like a little bit of time to be able to further research this and get back to you on it. I mean, what about the Wise case, which is quite extreme, i.e., it was an extremely unusual condition, an extremely onerous condition, giving up the custody of a child, and one which I assume there was no ability to project, get ready for, or anything else? And, of course, that happens. I mean, there's also what comes to mind is the Gementera sandwich for shaming case this Court decided about a decade ago. Those are extreme cases, however. And there always is going to be regular abuse of discretion review on the substance of the condition. Our point is simply that ---- But how could there be due process in a case where you're taking somebody's child away to not give them notice, I would say, before the hearing and give them a chance to argue about it and to present evidence and not simply to stand up after the judge has already made up his mind and say, I don't like this? Because what iris theory basically says is that the due process attaches in this sentencing context when a defendant has an expectation, a firm expectation, on a particular aspect of sentence. And ---- Well, that may be true when you're dealing about whether ---- when you have an imprisonment term, you have a statutory maximum, you know what roles you're operating in, and you're dealing in numbers. So it is perfectly possible to make an argument without knowing exactly what the judge has in mind. You can stand up and just say, this is what is an appropriate sentence given the guidelines, given his conditions, and so on. And it seems to me to be entirely different when you're dealing in a free-ranging world such as conditions of supervised release where there is no maximum, there are no borders, and there are no parameters. Our response would be that there is still a maximum in the supervised release context. The maximum are the constraints both in the subset of 3553 factors applicable to supervised release conditions, and this Court's case law construing what's a reasonable condition. In other words, a condition cannot properly ---- But those are principles, but they're not numbers and details and ---- and Wise is the best example of that. No. I agree that Wise is the best example, and it is extreme. But the continuance-based approach articulated by Irizarry still allows for that to be corrected. But what is there given ---- just let's take our precedent rules, okay? We have a rule that says you're supposed to give this notice. Irizarry is not dealing with these considerations I'm raising to you now because that wasn't what was before it. How can we say under Miller v. Gamme and our precedents that Irizarry overrules our precedents, which are about something else and something that's distinguishable? Of course, Miller v. Gamme has two prongs, essentially. One is that the Supreme Court has overruled this Court's cases directly, and the second prong is that the logic of this Court's cases can no longer be ---- And I'm questioning the second because I'm saying that one can come up with very good reasons, which you can either accept or not accept, but they're not stupid, why you would treat incarceration differently than supervised release conditions. Irizarry ---- That's a matter of due process, particularly. Well, if I can answer your question first. Irizarry is not just a custodial term case. Irizarry is not just a 32H case. Irizarry, contrary to at least the defense position in its reply brief, also had a page of analysis of Rule 32I, which was the rule construed in Burns and the rule discussed in Wise. That's the rule that says that a defendant should have an opportunity to discuss matters relevant to sentencing. Basically, Irizarry said that when a defendant doesn't have a firm expectation in a particular sentencing component, i.e., a mandatory, you know, guideline range, then Rule 32I doesn't do much work anymore. And so, yes, Irizarry spoke to the custodial term and variances in Wise speaks to supervised release conditions, but the logic of Irizarry has to spill over to all discretionary sentencing components, whether it's a discretionary supervised release condition or variance. And the only reason why Irizarry left on the books the notice requirement for departures is because in between Burns and Irizarry, Congress made it law. I mean, the Supreme Court in Irizarry had no occasion to strike 32H from the books. At the same time, you know, it wouldn't be a surprise at all if the Rules Committee comes back in the next go-round or the one after that and takes Rule 32 off the books itself because it's anachronistic now in an advisory system. If the defendant is truly surprised by anything that happens at sentencing, and again, there may be an exception where a judge, let's just take one of our more gruff judges, announces something at sentencing and walks straight off the bench and yells at defense counsel if he tries to stand up and ask for continuance, that would be an extreme case, and this Court could deal with that situation there. But in most cases, in the overwhelming majority of cases, if defense counsel stands up and asks for a modest continuance, the Court will grant it. And if the Court doesn't, then the defendant has two claims on appeal. One, that there was an abusive discretion on the denial of the continuance under Morris v. Slappy, and even the government in that situation would probably concede that there would be abusive discretion not to give defense counsel a week to brief a condition that came out of nowhere. And then secondly, the actual substance or the merits of the condition. And so what Irizarry has done, at least logically, and this is why I think it is inconsistent with Wise under the logic prong of Miller v. Gammey, Irizarry has taken the burden and shifted it from the government on appeal and the U.S. Courts of Appeals and put it on defense counsel to avoid a game of gotcha. And I use that term gingerly because both Mr. Dubois, the trial public defender, and Mr. Libby, phenomenal lawyers, very good friends of mine, but they're kind of trying to catch Judge Otero there. Until today. Pardon me? Until today. No, no, no. I mean, they're doing their job, and I don't begrudge them for what they're doing, but they are trying to catch Judge Otero in a game of gotcha. Mr. Dubois, prophylactic. I mean, there are two questions. I mean, one is whether or not Irizarry really did, does overrule Wise. And the second one is how that plays out in this case. And how it plays out in this case you haven't really addressed. But if we were to assume that Irizarry did not overrule Wise, how would it play out in this case? If Irizarry did not overrule Wise, I think this Court would have to affirm on harmless Because if Wise was still controlling, or the Wise line of cases, there was a lack of, a technical lack of notice. But it would be harmless in light of the fact that every single condition was either contemplated by Chapter 5 of the guidelines or by the plea agreements appeal waiver. And in particular, I guess I'd like to address Mr. Libby's argument that the notice requirement requires actual notice from the court or from the government sentencing position or from the probation office of the precise language of the condition. I think that that argument is wrong under both Wise itself and under Lopez. In particular, in Wise, page 1032 of the Court's decision, the Court looked to whether the record as a whole suggested the condition as a possibility before it was imposed. Clearly, the plea agreement would fit, would satisfy that standard here. And as far as the precise language argument, Lopez, page 1055 to 56, you know, in Lopez, the Court was construing 5D1.3D5 of the guidelines. That's an amorphous condition recommended by the guidelines. It doesn't have any precise contours. And Lopez said that that was sufficient notice. But none of the provisions in the guidelines have precise language. Right. So basically, you know, there doesn't have to be a perfect identity between what's in the record, given the defendant noticed that this condition is a possibility or what's not. Okay. Here's one now where notice may or may not have advanced things, and that is on this Council's arguing that the least restrictive option at the moment, an appropriate one, is the filtering software, and that going beyond that, there is excessive intrusion into collateral issues. The Second Circuit confronted this in Vallon, and the way they raised it, actually, was they raised it on their own, is that the objection was premature, not right, because of the very concern that technology changes. And so what their resolution was is that it directed that at the time of release, that the Court revisit the issue of monitoring. Counsel has raised, Mr. Libby has raised the concern that when it's a motion under 3583E2, if the defendant brings it, then the defendant bears the burden. I just was looking at Vallon, and it's not clear who bears the burden, although I would assume that they intended that the government had the same burden it would have had with the original sentencing. So why wouldn't that be a way to address the issue of monitoring in this case? I don't want to swim away from a possible lifeline, but I'm not sure that the Vallon approach would work under this Court's case law. Well, in general, our case law is that it is ripe at the outset, but this is a peculiar circumstance. Right. It is a peculiar circumstance, and I think that the modification, the availability for modification under Rule 32.1 and 3583 is a good reason why this Court shouldn't adhere to its strict notice rule of why, but as far as whether there was an abuse of discretion in imposing the condition here, I'm not sure it's that informative. And, again, under cases like, I think, Rodriguez-Rodriguez, talking about ripeness, this Court does have an obligation when a condition of supervised release is challenged on direct appeal. So what if we were to, well, all right, but let's suppose we agreed with counsel that it didn't appear to be the least restrictive and, therefore, you're saying that then what we should do is kick it back and reconsider in light of current technology. If the Court does agree with Mr. Libby that the condition is not the least, that the condition was an abuse of discretion, then, yes, I guess the problem that I have with that is. And you're saying we're powerless to defer the decision under our case law? I would think so. That would be where I would come out. And the case that makes us powerless is? Rodriguez-Rodriguez is in the ballpark. It was a case involving. That's okay. But I don't think that this Court should be analyzing this condition for whether it was narrowly tailored or whether it was the least restrictive means possible. The review now that we're on a, that's the analysis in district courts. But now that we're on appeal, the question is did Judge Otero abuse his discretion in choosing between these two options? Well, it ties in with the other lack of notice on the argument that, you know, there's one, although it was argued, it was argued on the fly. So with that, we have your briefs. I don't want to prolong the argument. But what about the sales case? In other words, as I understand the problem here, it isn't only whether you have monitoring versus non-monitoring. It's that you can't figure out what monitoring there is, because it isn't specified exactly what the monitoring system is, is what would matter. And that's what we can't figure out. It makes no sense to figure out now, because in nine years, they're going to be different. And I do agree with that. And, of course, you know, that problem is inherent in a number of supervisory release conditions. You know, when a district court says the defendant shall be subject to, you know, psychiatric treatment, you know, as determined by the probation officer, conditions are often not specific. And they might be different. Right. But if we thought that this is the problem, whether the monitoring is the least restrictive or not would depend on exactly what kind of monitoring you had in mind. This restriction doesn't say exactly what kind of monitoring we have in mind. Sales seems to say that's not good enough. You have to say exactly what kind of monitoring you have in mind. On the other hand, it doesn't make a lot of sense to say exactly what kind of monitoring you have in mind. So where does that lead us? Well, I think the easy way to deal with sales is to deal with the fact that that was a case where we didn't know from the defendant's conduct in the past where the condition was even coming from in the first place. I mean, computer use and Internet usage was not at all involved in that defendant's offense. But that wasn't the objection of the court, as I understood it. The objection of the court was what monitoring are you talking about? Well, I guess what I was trying to get at is that if you have a defendant like the defendant in this case, Mr. Quinzone, who used peer-to-peer technology to download the child pornography he was convicted of possessing and used computer technology to manipulate the images on his hard drive, you know, discussing the grease, I'll spare the details here, that there you can infer that you need more robust monitoring. Okay. But we still don't know what monitoring he's talking about. So any monitoring, then? It doesn't matter what kind of monitoring? I'm actually fine for the purposes of this case on direct appeal in this, you know, functionally, if not legally, but functional premature posture. I'm fine with analyzing it, you know, kind of assuming the worst, the most invasive, 24-hour surveillance. Well, not 24 hours, because I doubt he's on his computer 24 hours a day. But I'm fine assuming that that's going to be the kind of monitoring. And monitoring that will record every keystroke and will record it. And retain it and so on. Yes. And that for this defendant, Judge Otero did not abuse his discretion in finding that because filtering software can be circumvented by sophisticated defendants, and this defendant is computer savvy, we're to err on the side of caution. And if the defendant comes out of custody and has a job or some interest or there's some reason why that kind of monitoring is invasive, he can seek modification under 3583 and 32.1. But this posture on the record here, it wasn't an abuse of discretion. It wasn't kind of beyond the pale under the Hinson-type analysis for Judge Otero to say, I'm going to go with monitoring. And, again, we can assume that it's the most invasive type here, and I still think that that's fine on this record. It wouldn't have been in sales because of the nature of that defendant's offense and the complete absence of any indication that he was computer savvy. Thank you. The Court has answered the question. Thank you. Thank you. I'll ask you one more time. So if the Court has any questions, I'll ask the Court questions also. I think we have. Thank you. Good to see you. Thanks, both. And I'm glad you're still friends. Well, listen, civility in the courtroom and outside is an important thing, so it's good to know that. Okay.
judges: Pregerson, Fisher, Berzon